IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Reed Clifton Tanner, | ) | |
| | ) | Civil Action No. 8:10-cv-270-CMC-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying his claim for supplemental security income ("SSI").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff filed a claim for SSI on July 29, 2005, alleging disability as of January 2000. [R. 123.]  The claim was initially denied on December 8, 2005 [R. 68], and was denied on reconsideration by the Social Security Administration ("the Administration") on May 12,

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

2006 [R. 67].   Plaintiff requested an administrative hearing, and on June 6, 2008, Administrative Law Judge ("ALJ") Richard Vogel held a hearing on Plaintiff's claim [R. 804–29] after granting Plaintiff two continuances [R. 788–803].

On June 27, 2008, the ALJ issued his decision that Plaintiff was not disabled under § 1614(a)(3)(A) of the Social Security Act ("the Act").  [R. 18–29.]  Following his review of the evidence, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (part A).   [R. 23, Finding 3.]   The ALJ also found that Plaintiff retained the residual functional capacity to perform "light,"[2] unskilled work.   [R. 25, Finding 4.]  With these restrictions, the ALJ found that Plaintiff was unable to perform any past relevant work [R. 28, Finding 5], but jobs existed in significant numbers in the national economy that Plaintiff could perform [R. 29, Finding 9].

On September 15, 2009, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision.  [R. 11–14; 20 C.F.R. § 416.1481.]  Plaintiff filed this action for judicial review on February 3, 2010.  [Doc. 1.]

### THE PARTIES' POSITIONS[3]

Plaintiff contends that the ALJ denied his claim due to bias against Plaintiff.  [Doc. 18 at 3.]  He also complains that the Appeals Council erred in declining to review the ALJ's

---

[2]The Administration has defined "light work" to include lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects up to ten pounds, and standing or walking, on and off, for six to eight hours.  Social Security Ruling 83-10, S.S.R. Cum. Ed. 174 (1983).

[3]Because Plaintiff appears before this Court pro se, the Court is required to liberally construe his documents, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam).

decision.  [*Id.* at 6.]  Plaintiff further argues that there is sufficient evidence, including "new evidence" he submitted to the Appeals Council, to show that he is disabled.  [*Id.* at 7.]  The Commissioner contends that there is no evidence of the alleged bias; the Appeals Council committed no error of law in declining to review the ALJ's decision; and substantial evidence supported the ALJ's disability decision.  [Doc. 19 at 12–19.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial

evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence

4

or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g., Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181-82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan* v. Sullivan, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of its receipt of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g)); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*'s construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

## APPLICABLE LAW

The Act provides that SSI shall be available to, inter alia, a "disabled" adult who meets certain income, resource and residency requirements. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(1). To be deemed "disabled" for SSI purposes, an adult must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1574, 404.1575.

### B.   *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and

8

well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[5] Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e).

perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.[6]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell*, 699 F.2d at 187). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th

11

Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(e).

However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

13

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id*.

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR 88-13 ), Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of

14

> pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02 (Aug. 6, 1990), *superseded by* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996) ("If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."); *see* 20 C.F.R. § 416.929(c)(1)–(c)(2).

## VI.　Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the credibility finding must be obvious from the record. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

15

## APPLICATION AND ANALYSIS

**Plaintiff's Medical History**

Plaintiff has reported bowel problems—which he attributes to time working abroad as a missionary evangelist—since the early 1990s, and was diagnosed with irritable bowel syndrome in 1995. [*See, e.g.*, R. 602, 614, 654, 663–65.] In 2000, he was assessed with anxiety, depression, and possible fibromyalgia. [R. 624–28, 645–46, 651.] In early 2002, Robert T. McDonald, M.D., noted that Plaintiff was slightly depressed but declined treatment. [R. 552.] In May and June 2002, Plaintiff sought treatment for pain and muscle spasms in his shoulder and upper back. [R. 671–72.] He reported anxiety due to unemployment and said that, after a neck injury 20 years earlier, he experienced muscle tension during times of stress. [R. 529–49.] Plaintiff was assessed with musculoskeletal pain and prescribed medication for treatment, including muscle relaxants and antidepressants. [*Id.*]

 In August 2002, Plaintiff reported that he had not been taking the antidepressants and was not sure that they had helped. [R. 528.] He said his back pain had "about resolved." [*Id.*] Plaintiff continued to seek treatment for irritable bowel syndrome and muscle pain during 2003 and 2004. [R. 477–78, 497–98, 518–19.]

In September 2005, Plaintiff called the Charleston Veteran's Administration Medical Center ("VAMC") to report weakness, fatigue, diarrhea, and depression. [R. 412–13; *see also* R. 725–26.] The following month, Plaintiff presented for evaluation to Christina M. Cox, M.D., of the VAMC. [R. 317–22; *see also* R. 403–09.] He reported decreased

16

energy, muscle aches, decreased muscle mass, and a history of fibromyalgia and depression. [R. 318.] He was assessed with low testosterone levels. [R. 322.]

In December 2005, Plaintiff reported diarrhea four or five times per week and difficulty sleeping due to irritable bowel syndrome, although he did not take any sleep medication. [R. 122.] Despite his allegedly disabling impairments, Plaintiff was able to bathe, dress, perform household chores, drive a car, shop for groceries, read, go for walks, go out to eat, and visit with friends. [*Id.*]

In March 2006, Plaintiff presented to the VAMC Primary Care Clinic, stating that he was "primarily here for documentation." [R. 362.] Plaintiff reported that he had been unable to work since 1999, mostly because of irritable bowel syndrome. [*Id.*] He said that he had at least three to six episodes of diarrhea per day. [*Id.*] While Plaintiff reported anxiety, which he attributed to financial concerns, and depression, VAMC physician's assistant Lance Lewandowski noted that Plaintiff had never been treated by a mental health consultant. [*Id.*] Mr. Lewandowski spoke with Plaintiff about his diet and started Plaintiff on Bentyl, a medication for irritable bowel syndrome. [R. 363–64.] In April 2006, Plaintiff called the VAMC and reported "exhaustion for the last two weeks," as well as diarrhea and muscle aches. [R. 360–61.]

In July 2006, Plaintiff presented for evaluation to David G. Koch, M.D., of the VAMC. [R. 347–50.] Plaintiff reported diarrhea and abdominal pain, which improved with Imodium and Bentyl but worsened with stress. [R. 347.] Plaintiff reported three to four bowel movements per day. [*Id.*] On examination, Dr. Koch found Plaintiff was well developed, with a non-tender, non-distended abdomen. [R. 349.] Dr. Koch noted that Plaintiff's

assessment suggested Plaintiff's ailment was fat malabsorption.  [*Id.*]  During this time period, Plaintiff began taking the antidepressant Amitriptyline for irritable bowel syndrome.  [R. 343.]

In August 2006, Plaintiff presented to medical resident Beatrice Janulyte, M.D., and attending physician Louis Luttrell, M.D., for evaluation.  [R. 343–45.]  He reported decreased energy but acknowledged that he had not been taking his testosterone medication as prescribed.  [R. 343.]  In September 2006, Plaintiff reported painful swelling in both feet, which was exacerbated by activity and prolonged sitting or standing but relieved by changing position.  [R. 389.]  He attributed the swelling to his medication, which was subsequently adjusted.  [R. 387.]

In January 2007, Plaintiff told Dr. Janulyte and Jeremy B. Soule, M.D., that he was still experiencing fatigue.  [R. 371.]  He said he had a lot of anxiety, did not sleep well at night, and sometimes had daytime drowsiness (somnolence).  [*Id.*]  Dr. Janulyte ruled out sleep apnea.  [R. 373.]  Plaintiff also sought treatment for irritable bowel syndrome during this time period, reporting diarrhea three times per day even though he was taking Imodium and Bentyl.  [R. 305, 339–40, 369.]  In February 2007, Plaintiff reported restless sleep and no changes in his fatigue.  [R. 329.]  During the same time period, Mr. Lewandowski noted Plaintiff possibly suffered from fibromyalgia.  [R. 334; *see also* R. 323.]  A March 2007 colonoscopy was normal, other than hemorrhoids.  [R. 326–28, 435–36.]

In May 2007, Plaintiff reported fatigue, insomnia, and muscle and joint pain (arthralgia).  [R. 269–72.]  The following month, Plaintiff presented to resident David S. Pucci, D.O., and rheumatologist Gary S. Gilkeson, M.D., for evaluation.  [R. 261–65.]  Plaintiff reported debilitating fatigue and generalized body aches since 1988 and said he

18

was unable to work as a result of these symptoms.  [R. 261.]  He said that the symptoms started after a 1988 dispute with the post office regarding the cost of a post office box.  [*Id.*] Plaintiff also described a long series of run-ins with the post office and a conspiracy involving the Postmaster General.  [*Id.*]  Plaintiff said his symptoms improved with testosterone shots "but not to pre-1988 levels."  [*Id.*]  Dr. Pucci and Dr. Gilkeson assessed Plaintiff with fibromyalgia and recommended a mental health consult.  [R. 264.]

In July 2007, Plaintiff reported that he was having diarrhea three or four times per day while taking Imodium, as opposed to more than five times per day when he was not taking Imodium.  [R. 248.]  He said Bentyl did not help his symptoms, and he reported he was unable to tolerate the antidepressant.  [*Id.*]  Plaintiff's main complaint was abdominal bloating.  [*Id.*]  Noah M. DeVicente, M.D., noted that Plaintiff's symptoms were most consistent with irritable bowel syndrome.  [R. 250.]  He adjusted Plaintiff's mediation and instructed Plaintiff to follow up in three to four months.  [*Id.*]  In late July 2007, Plaintiff underwent a sleep study.  [R. 245–47; *see also* R. 250.]  He was diagnosed with sleep apnea.  [R. 247.]

In August 2007, Plaintiff reported continued fatigue, insomnia, and joint and muscle pain.  [R. 241.]  He agreed to try a continuous positive airway pressure ("C-PAP") machine when sleeping.  [R. 243.]  Resident Brian M. Lake, D.O., and attending physician Jules Sagel, M.D., instructed Plaintiff, who was six feet tall and weighed 297 pounds, to lose weight and exercise more.  [R. 243–44.]  In September 2007, Plaintiff told Mr. Lewandowski that Plaintiff had experienced a lot of muscle cramps in his calves and hamstrings "over the last few weeks."  [R. 238.]  He said a weekly massage helped.  [*Id.*]

19

Plaintiff reported sweating when washing dishes, sleeping, or sitting at a desk.  [*Id.*]  He stated that he walked twice a week for 90 minutes at a time.  [*Id.*]  Upon examination, Mr. Lewandowski noted Plaintiff looked exhausted but was in no apparent distress.  [R. 239.]

In October 2007, Plaintiff was fitted with a C-PAP machine.  [R. 199, 203, 207-10; *see also* 224–27, 230–34.]  In November 2007, Plaintiff told Dr. DeVicente that he experienced up to six bowel movements on bad days, and one or two bowel movements on good days.  [R. 219.]  Plaintiff said he had five bad days and two good days per week.  [*Id.*]  Dr. DeVicente adjusted Plaintiff's medication.  [R. 221.]  Also in November 2007, Plaintiff reported that he was not using the C-PAP machine because it made him anxious.  [R. 213.]  Plaintiff was again instructed to increase his exercise.  [R. 215.]

In February 2008, Plaintiff requested a mental health evaluation for depression.  [R. 161.]  He said he was not suicidal.  [*Id.*]  At a routine follow-up appointment with Mr. Lewandowski in March 2008, Plaintiff reported sadness, and he said he stayed home a lot and avoided going out in public.  [R. 152.]  During a psychiatric diagnostic assessment with Jacob Mintzer, M.D. [R. 180–85], Dr. Mintzer observed Plaintiff was alert, with increased psychomotor activity, hypomanic mood, grandiose delusions, fair grooming, intact memory, and fair judgment and insight [R. 183–84].  Dr. Mintzer made an initial assessment of hypomania and probable bipolar disorder.  [R. 184.]

Also in March 2008, Plaintiff told clinical nurse specialist Deborah Sandborn that he had never been diagnosed with depression but had been admitted to a psychiatric hospital and diagnosed as suffering from a personality disorder.  [R. 174.]  He reported low energy, depression, and sleep difficulty, which he said had worsened in the last few months.  [*Id.*]

Ms. Sandborn indicated that major depressive disorder, bipolar disorder, generalized anxiety disorder, and post traumatic stress syndrome should be ruled out.  [R. 178.]  Later that month, Plaintiff reported fatigue and insomnia.  [R. 157.]  He again stated that he did not use the C-PAP machine; Corey White, M.D., advised Plaintiff to use the machine.  [R. 157, 159.]

In an undated memo, Mr. Lewandowski stated that he was unable to rate Plaintiff's ability to perform work-related activities.  [R. 144.]  However, Mr. Lewandowski also opined that Plaintiff's condition had declined over the course of his treatment and that Plaintiff's depression, fibromyalgia, endocrinal imbalance, and chronic fatigue would "be debilitating and cause for being unable to perform job-related activities."  [*Id.*]

Following the ALJ's June 2008 decision, Plaintiff wrote several letters to the Appeals Council and submitted additional medical evidence, including a September 2008 letter from psychologist James McDonagh, November 2008 letters from Dr. DeVicente and psychiatrist E. Baron Short, and November 2008 treatment records from the Charleston VAMC.  [R. 1A, 14, 768-87.]  Dr. McDonagh said that he had met weekly with Plaintiff at the VAMC mental health clinic beginning in mid-April 2008; that he had diagnosed Plaintiff with somatization disorder, anxiety, and depression; and that Plaintiff had elected not to take medication for these conditions.  [R. 773–74.]  Dr. McDonagh said that Plaintiff's symptoms "appear[ed] to be interfering with his capacity to fulfill the responsibilities associated with substantial gainful employment," but Dr. McDonagh expressed hope that Plaintiff would be able to work within three to five years.  [R. 775.]

Dr. DeVicente stated that Plaintiff had been treated in the VA Hospital for irritable bowel syndrome since June 2006 and that Plaintiff reported six to twelve bowel movements

21

per day, as well as fatigue.  [R. 783.]  Dr. DeVicente also relayed Plaintiff's report that his irritable bowel syndrome interfered with his daily activities.  [*Id.*]  Dr. Short said Plaintiff participated in an investigative trial for the treatment of fibromyalgia during October and November 2008.  [R. 782.]

The November 2008 VAMC records reflected, among other things, Plaintiff's treatment for irritable bowel syndrome, generalized and social anxiety, fibromyalgia, and somatic pain disorders.  [R. 786.]  Dr. Lutrell mentioned an October 2008 note from a psychiatrist at the VAMC mental health clinic that indicated Plaintiff's symptoms were disabling.  [R. 784.]

**Bias**

Plaintiff claims that the ALJ who presided over his hearings and issued the decision in his case was "bigoted and biased"[7] against Plaintiff and "should have removed himself from considering the case." [Doc. 18.] Although an administrative adjudicator is presumed to be unbiased, *see Schweiker v. McClure*, 456 U.S. 188, 195 (1982), this presumption can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible," *Liteky v. United States*, 510 U.S. 540, 556 (1994).  Rulings alone, however, are almost never sufficient evidence of bias.  *Id.* at 555; *Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir. 1996).  Further, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what

---

[7]Plaintiff traced this alleged bias to the ALJ "being very familiar" with his military record [Doc. 6 at 4], but the ALJ stated only that he was "aware of" Plaintiff's early discharge from the Marines and Plaintiff's concurrent diagnosis of "personality disorder" [R. 811]; this information is contained in Plaintiff's medical records [*see, e.g.*, R. 174].

imperfect men and women . . . sometimes display" do not establish bias. *Liteky*, 510 U.S. at 555–56.

Contrary to Plaintiff's characterization, the record does not "bleed[]" with the ALJ's "hostility & biasness." [Doc. 18.] Rather, the transcript of Plaintiff's hearings reveal that the ALJ was only gracious and accommodating to Plaintiff; the ALJ granted Plaintiff two continuances, contrary to the ALJ's normal practice, and instructed Plaintiff about how to obtain free legal assistance. [R. 790, 800–02]. Plaintiff, in turn, expressed his appreciation to the ALJ. [R. 795, 802.] Therefore, the Court finds no merit in Plaintiff's claim of bias. Further, because the Court is unable to ascertain any indication that the ALJ is biased toward Plaintiff—and, indeed, Plaintiff asserts that the biased message was both "clear" and "coded" [Doc. 18]—there is no legal requirement that the ALJ be excluded from considering this case upon remand.

**Consideration of New Evidence by Appeals Council**

After Plaintiff requested review of his hearing decision by the Appeals Council, he submitted additional evidence. [*See* R. 1A, 14.] The new evidence provided by Plaintiff included letters from licensed clinical psychologist James McDonagh [R. 773–75], gastroenterologist Noah DeVicente [R. 783], and endocrinologist Luis Luttrell [R. 784–85]. Dr. McDonagh stated that he met with Plaintiff weekly for five months, from April through September 2008. [R. 773.] Dr. McDonagh believed that Plaintiff had "significant and real physical and mental health issues [that] appear to be interfering with his capacity to fulfill the responsibilities associated with substantial gainful employment." [R. 775.] Dr. DeVicente began seeing the Plaintiff in July 2007. [R. 783.] Dr. DeVicente indicated in his notes that Plaintiff "continues to be very concerned with the fact that his daily

23

routines/plans are interrupted due to his IBS symptoms and that he does not believe that he can be employed on a regular basis due to these difficulties." [*Id*.]  It appears that Dr. Luttrell started treating the Plaintiff in October 2005.  [*See* R. 317.]  Dr. Luttrell noted that Plaintiff's "documented endocrine conditions, considered in isolation, are not disabling. However, when these physical conditions are viewed in the context of [Plaintiff's] non-endocrinologic and psychiatric illness, I[] have little doubt that [Plaintiff] suffers from substantial chronic disability."  [R. 785.]  The Appeals Council stated that it "found no reason under [the] rules to review the [ALJ]'s decision" and that Plaintiff's new evidence did "not provide a basis for changing the [ALJ]'s decision."  [R. 11–12.]

In the Fourth Circuit, a reviewing court must include new evidence reviewed by the Appeals Council in its consideration of the record as a whole in determining whether substantial evidence supports the ALJ's decision:

> The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Evidence is new within the meaning of this section if it is not duplicative or cumulative.  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

*Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (citations and footnote omitted).  Although the new evidence must relate to the period on or before the date of the ALJ's decision, "[t]his does not mean that the evidence had to have existed during that period.  Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time."  *Reichard v. Barnhart*, 285 F. Supp. 2d 728, 733 (S.D.W. Va. 2003) (quoting 20 C.F.R. § 404.970(b)).

24

Additionally, new evidence is "material" when it contradicts the ALJ's findings and conclusions regarding the severity of the claimant's medical problems. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001).

The Commissioner argues that several of the documents submitted by Plaintiff do not relate to the period on or before the date of the ALJ's decision; not all of the evidence submitted by Plaintiff is new; and all of the evidence which Plaintiff submitted to the Appeals Council was prepared after the date of the ALJ's decision and, thus, is not material in that there is not a reasonable probability that it would have changed the outcome of the case, citing *Wagner v. Apfel*, 201 F.3d 439, 1999 WL 1037573, at *3 (4th Cir. 1999) (unpublished table decision). Upon review, the Court finds that Plaintiff submitted "new" evidence that related to the period before the date of the ALJ's decision, although dated after the decision, because the dates cited by the various treating care givers show that their opinions are relevant to the period *sub judice*.[8] *See Reichard*, 285 F.Supp.2d at 733.

If the Appeals Council considers additional evidence in denying review of a claim, it is incumbent on the Appeals Council to give some reason and explanation for finding that the additional evidence does not justify further administrative action.[9] *See, e.g.*, *Belue v.*

---

[8]Plaintiff has, however, failed to satisfy the requirements of 42 U.S.C. § 405(g) with respect to evidence attached to his October 12, 2010 filing [Doc. 20]. This evidence will not be part of the evidence to be reviewed upon remand. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.,* 953 F.2d 93, 96 n.3 (4th Cir. 1991) ("A claimant seeking a remand on the basis of new evidence under 42 U.S.C. § 405(g) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier.").

[9]The Court recognizes that there is a split of authority as to whether the Appeals Council should be required to articulate its reasoning when it accepts and considers additional evidence but denies review of the ALJ's decision. *See Jackson v. Astrue*, No. 0:08-cv-579, 2009 WL 1181178, at *5 (D.S.C. May 1, 2009) (discussing split of authority). However, a review of the cases in the District of South Carolina reveals that a majority of the judges in this District require the Appeals Council to give some explanation. *See Roberts v. Astrue*, No. 0:10-cv-867, 2011 WL 1356776, at *1–2 (D.S.C. Apr. 11, 2011) (Gergel, J.); *Lewis v. Astrue*, No. 9:09-cv-

*Astrue*, No. 1:09-cv-942, 2010 WL 3734714, at *3 (D.S.C. Sept. 20, 2010). Here, a review of the new evidence shows that it directly relates to several issues addressed by the ALJ. For example, the ALJ concluded that Plaintiff's mental limitations were mostly "mild," and the ALJ's opinion relied on Plaintiff's preoccupation with his somatic complaints and the lack of objective findings in Plaintiff's medical records. [R. 24, 26–28.] However, Dr. McDonagh's letter indicates Plaintiff's mental limitations were more than mild [R. 774–75], and Dr. McDonagh's diagnoses include "Somatization Disorder" [R. 773]. The Appeals Council should have either added its reasoning for rejecting the additional evidence or remanded the matter to the ALJ for consideration. Without a reasoned decision on the additional evidence, the Court cannot determine whether substantial evidence supports the Commissioner's decision. Therefore, the Court recommends that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to determine whether the additional evidence affects the ALJ's decision.

---

3134, 2011 WL 901000, at *4 (D.S.C. Mar. 15, 2011) (Childs, J.); *Belue v. Astrue*, No. 1:09-cv-942, 2010 WL 3734714, at *3 (D.S.C. Sept. 20, 2010) (Seymour, J.); *Cagle v. Astrue*, No. 2:09-cv-115, 2010 WL 3734234, at *3 (D.S.C. Sept. 20, 2010) (Anderson, J.); *Chapman v. Astrue*, No. 07-cv-2868, 2010 WL 419923 (D.S.C. Jan. 29, 2010) (Wooten, J.) (adopting Report and Recommendation of magistrate judge); *Suber v. Comm'r*, 640 F. Supp. 2d 684, 688 (D.S.C. 2009) (Floyd, J.); *Priestley v. Astrue*, No. 6:08-546, 2009 WL 1457152, at *14–15 (D.S.C. May 22, 2009) (Anderson, J.) (adopting Report and Recommendation of magistrate judge); *Jackson*, 2009 WL 1181178 (Currie, J.) (adopting Report and Recommendation of magistrate judge); *Raymond v. Astrue*, No. 2:08-cv-974, 2009 WL 632317, at *6 (D.S.C. Mar. 11, 2009) (Blatt, J.) (adopting Report and Recommendation of magistrate judge); *Wheelock v. Astrue*, No. 9:07-cv-3786, 2009 WL 250031, at *9 (D.S.C. Feb. 3, 2009) (Herlong, J.); *Harmon v. Apfel*, 103 F. Supp. 2d 869, 873 (D.S.C. 2000) (Norton, J.).

**Use of Grids**

Lastly, at step five of the sequential evaluation, the ALJ relied upon the grids, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2,[10] to find Plaintiff not disabled.  As previously stated, the Commissioner may only rely on the grids to meet his burden at step five if the claimant does not have significant non-exertional factors; otherwise, he must use a vocational expert to establish the claimant's ability to perform other work.  *Gory*, 712 F.2d at 930–31. Plaintiff's new evidence indicates that he suffered from significant non-exertional impairments during the relevant period.  [R. 773, 786.]  Consequently, if the ALJ reaches step five upon remand, he may be precluded from relying on the grids.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be REMANDED to the Commissioner for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 29, 2011
Greenville, South Carolina

---

[10]The grids, although located in Part 404 of Title 20, are applicable to SSI claims under 20 C.F.R. § 416.969.